JAMES M. McCUNN & CO., INC., A CORPORATION, APPELLANT, v. FLEMING & McCAIG, INC., A CORPORATION, AND DIVISION OF ALCOHOLIC BEVERAGE CONTROL OF THE STATE OF NEW JERSEY, RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued April 27, 1964—Decided May 27, 1964.

Before Judges CONFORD, FREUND and SULLIVAN.

*Mr. Joseph M. Jacobs* argued the cause for appellant (*Messrs. Harrison & Jacobs,* attorneys).

*Mr. Max Mehler* argued the cause for respondent, Fleming & McCaig, Inc.

*Mr. Samuel B. Helfand,* Deputy Attorney General, argued the cause for respondent, Division of Alcoholic Beverage Control (*Mr. Arthur J. Sills,* Attorney General of New Jersey, attorney).

The opinion of the court was delivered by

SULLIVAN, J. A. D. This case involves an appeal by James M. McCunn & Co., Inc. (McCunn), from the conclusions and order of the Acting Director (Director) of the Division of Alcoholic Beverage Control requiring McCunn to sell and continue to sell to Fleming & McCaig, Inc. (McCaig) alcoholic beverages "on terms usually and normally required" by McCunn.

The appeal was originally argued in September 1963, as a result of which we continued the Director's order, retained jurisdiction of the appeal, but remanded the matter for additional findings and conclusions. Our opinion in 81 *N. J. Super.* 97 (*App. Div.* 1963) sets forth the factual background and details of the case.

Following the remand the Director filed "Supplemental Conclusions" in which he determined:

(1) That McCunn's establishment of a sales quota for its distributor was inimical to the meaning and purpose of the Alcoholic Beverage Control Act and was therefore an invalid objective criterion.

(2) Assuming a sales quota or goal was not *per se* invalid, the 8,000-case figure was unrealistic in the light of past sales and was therefore arbitrary and unreasonable.

(3) McCunn had not offered McCaig a reasonable opportunity to demonstrate its ability to handle the distributorship.

(4) McCunn was not justified in refusing to sell to McCaig in view of the relationship between the parties and their experience with each other.

(5) McCunn's decision "to discontinue the distributorship to McCaig and invest it in the Reinfeld Company was not based upon terms usually and normally required by the importer since the criterion applied to McCaig was not similarly applied or sought to be applied to the Reinfeld Company."

After the filing of the supplemental conclusions, additional briefs were submitted on behalf of the parties and further oral argument was had. At the latter hearing, the Attorney General argued, as had McCunn on the original appeal, that the Director's order directing McCunn to "sell and continue to sell * * * on terms usually and normally required by the respondent" was broader than permitted by the legislative delegation and should be modified so as to be confined to a direction to McCunn to complete the sale of the particular order which McCaig had presented and McCunn had refused to fill.

Our conclusion is that the Director's order should be affirmed for the following reason.

■■ The scope of the order was warranted by the circumstances. The evidence is clear that McCunn's refusal to sell to McCaig was a refusal to have any further dealings with McCaig and was not limited to the one sale. An order from the Director to complete the particular sale would not have afforded McCaig any real relief. As to the statutory power of the Director to enter an order of such scope, we note that the terms of the order in question to "sell and continue to sell * * * on terms usually and normally required by respondent" were taken verbatim from the Division order reviewed in *Canada Dry Ginger Ale, Inc. v. F & A Distrib. Co.,* 28 *N. J.* 444 (1958). True, the legality of the scope of the order was not involved in that case. Nevertheless, the Supreme Court, in affirming the Division's ruling, noted the precise terms of

the order. The purpose of *N. J. S. A.* 33 :1–93.1 *et seq.* is to prevent discrimination in the sale of alcoholic liquors by distillers, importers, etc., to duly licensed wholesalers of alcoholic liquors in this State. We are satisfied that the statute confers upon the Director adequate power to effectively carry out the legislative intent and that the order entered was necessary for that purpose.

As heretofore noted, the Director in his supplemental conclusions determined that McCunn's establishment of a sales quota for its distributor was inimical to the meaning and purpose of the Alcoholic Beverage Control Act.

It is clear that the 8,000-case commitment in the instant case, while in form a matter of agreement between the parties, was in substance a sales quota set by McCunn. As noted in our earlier opinion, McCaig had "misgivings" as to whether the market could absorb this amount of Begg scotch. Undoubtedly it agreed to the 8,000-case figure in order to obtain the distributorship.

We do not agree, however, that a sales quota is *per se* inimical to the meaning and purpose of the statute. A quota which is reasonable in amount and is not applied in an inflexible manner is not at odds with the purpose of the statute. The facts of economic life apply to the liquor industry. A distiller or importer, as any other businessman, has the right to expect that his distributor will attain at least minimum standards of reasonable sales performance. We recognize that the use of a quota to overstimulate liquor sales would be contrary to the statutory purpose. See *Canada Dry Ginger Ale, Inc. v. F & A Distrib. Co., supra,* 28 *N. J.,* at *p.* 455. However, the overstimulation would inhere in the amount of the quota, or in the manner of its application, rather than in the concept that a distributor was expected to attain at least a minimum reasonable sales goal.

As noted above, the Director determined that even if a sales quota was not *per se* invalid, the 8,000-case commitment in the instant case was unreasonable, and that McCunn had

not afforded McCaig a reasonable opportunity to demonstrate its ability to handle the distributorship.

Without reviewing the evidence in detail we are satisfied that there was substantial credible evidence to support these findings. The Director based his determination that the 8,000-case figure was unreasonable on an analysis of past sales and depletion experiences. He found that the 8,000-case figure was "more than a thirty per cent increase over and above the best depletion figure theretofore attained."

The finding that McCunn did not afford McCaig a reasonable opportunity to demonstrate its ability to handle the distributorship was based on the eight-month period involved, the evidence that Barry had stocked up his customers immediately prior to turning his accounts over to McCaig, and that McCaig had unexpectedly lost many of the Barry accounts. In view of these factors the Director concluded that eight months were an insufficient time to enable McCaig to demonstrate its ability to handle the distributorship.

The Director's reference to the relationship between the parties and their experience with each other is based upon the evidence, referred to in our original opinion, that McCaig had been selling McCunn's products either as sole distributor or subdealer since at least 1947, and that in 1961, when McCaig purchased the Barry accounts for $15,000, it did so with the knowledge and concurrence of McCunn. The Director concluded that this was a factor to be considered in judging whether McCunn's subsequent refusal to sell to McCaig was arbitrary. The Director also found it significant that while McCaig had been required to order on the basis of a fixed annual commitment, no such quota system was applied to McCaig's successor, the Reinfeld Company.

The Director determined that all of the foregoing, namely, the excessive quota, inadequate time, relationship between the parties and requiring a fixed annual commitment of McCaig but not of its successor, added up to discrimination within the intent of the statute. *N. J. S. A.* 33 :1–93.1 *et seq.*

These findings and conclusions are substantially supported by the record as a whole and we must accept them. On the basis of such findings and conclusions the adjudication of discrimination was well founded.

The order of the Director is affirmed.